# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| QUINCY BROWN,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>R. ROBLES, et al.,<br><br>　　　　Defendants. | Case No.: 1:16-cv-00751-DAD-SAB (PC)<br><br>FINDINGS AND RECOMMENDATION RECOMMENDING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT BE GRANTED<br><br>[ECF No. 19] |

Plaintiff Quincy Brown is appearing pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.

Currently before the Court is Defendants' motion for summary judgment, filed March 29, 2018.

**I.**

**RELEVANT HISTORY**

This action is proceeding against Defendants R. Robles and C. Riley for deliberate indifference to a serious medical need in violation of the Eighth Amendment

On March 27, 2017, Defendants filed an answer to the complaint.

On March 28, 2017, the Court issued the discovery and scheduling order.

As previously stated, on March 29, 2018, Defendants filed a motion for summary judgment. Plaintiff did not file an opposition and the time period to do so has expired. Accordingly, Defendants'

motion for summary judgment is deemed submitted for review without oral argument. Local Rule 230(l).

## II.

## LEGAL STANDARD

Any party may move for summary judgment, and the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) (quotation marks omitted); Washington Mut. Inc. v. U.S., 636 F.3d 1207, 1216 (9th Cir. 2011). Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1) (quotation marks omitted). The Court may consider other materials in the record not cited to by the parties, but it is not required to do so. Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001); accord Simmons v. Navajo Cnty., Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010).

In judging the evidence at the summary judgment stage, the Court does not make credibility determinations or weigh conflicting evidence, Soremekun, 509 F.3d at 984 (quotation marks and citation omitted), and it must draw all inferences in the light most favorable to the nonmoving party and determine whether a genuine issue of material fact precludes entry of judgment, Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d at 942 (quotation marks and citation omitted).

## III.

## DISCUSSION

### A. Summary of Plaintiff's Allegations

On June 26, 2015, Plaintiff was transported to San Joaquin Community Hospital for scheduled surgery to graft a tendon to be attached in his left middle finger.

Dr. Michael Brandon Freeman performed the produce of stage II tendon reconstruction with grafting of left long finger. Dr. Freeman cut open Plaintiff's left middle finger, harvested a tendon and

attached one end to the left wrist, and the other end to the Hunter rod. He then sutured the finger and placed a cast and bandage on it.

Plaintiff was given discharge post-surgery instructions to contact a doctor or go to an emergency room in case of bleeding and/or increased pain.

On June 27, 2015, the morning following the surgery, Plaintiff reported to the nurses at A-facility medical office, that he felt something snap in his left middle finger, for which had the graft tendon repair surgery and that he was experiencing increased pain levels in his left finger causing bleeding.

Plaintiff was instructed to return later in the day, if he continued to suffer increased pain and bleeding.

Plaintiff returned around 4:30 p.m. the same day, and reported that the pain and bleeding had increased. Three hours later, at approximately 7:30 p.m., Registered Nurse C. Riley saw Plaintiff regarding his complaints of pain and bleeding.

C. Riley told Plaintiff that the doctor was not on duty at the time, and there was nothing she could do for Plaintiff's condition.

Plaintiff protested to C. Riley that the post-surgery instructions stated that he was to contact a doctor immediately if his finger started to bleed, which it had, or if he experienced increased pain, which he had. If no doctor was available at the prisoner, then Plaintiff was to be transported to the emergency room.

C. Riley instructed Plaintiff to return to his cell. Plaintiff again protested and C. Riley told him that she would schedule Plaintiff to be seen by the doctor on the following day, but there was nothing she could do for him. Plaintiff asked C. Riley for stronger pain medication until the following day, but C. Riley refused. Plaintiff was forced to return to his cell.

Plaintiff suffered excruciating pain all night and was unable to sleep. Plaintiff's finger continued to bleed throughout the night.

On June 28, 2015, two days after the surgery, Plaintiff was summoned to report to "work change" to be escorted to the Correctional Treatment Center ("CTC"), located on prison grounds.

///

1    In order to be processed to CTC, Plaintiff had to get undressed and pass through a metal
2    detector to leave his assigned prison yard. Plaintiff was so weak and dizzy from lack of sleep and loss
3    of blood, that he was unable to dress. Therefore, Plaintiff was processed without being required to
4    undress due to his medical condition.

5    Plaintiff was seen by Doctor R. Robles at CTC around 8:30 a.m. on the morning of June 28,
6    2015. Plaintiff informed Doctor Robles that he felt something snap in his left middle finger the day
7    before, and the finger started to bleed throughout the day and night, and he experienced a substantial
8    increase in pain. Plaintiff shoed Doctor Robles his blood-soaked bandage on his left hand and
9    complained of substantially increased pain.

10   Doctor Robles told Plaintiff there was nothing wrong or out of the ordinary for the type of
11   surgery he had on his finger. Plaintiff protested to Doctor Robles that something went wrong with the
12   surgery because held felt something snap and the finger started to bleed and he suffered a substantial
13   increase in the level of pain. Doctor Robles told Plaintiff his symptoms were normal.

14   Plaintiff told Doctor Robles that the post-surgery discharge instructions instructed Plaintiff to
15   immediately contact a doctor and/or go to an emergency room if just one of the symptoms, i.e.
16   bleeding or increased pain occurred. Doctor Robles ordered Plaintiff to be returned to his facility
17   without even examining his finger.

18   Plaintiff informed Doctor Robles that the post-surgery discharge instructions required that the
19   bandaging remain dry at all time, and to at least replace the blood-soaked bandaging with dry clean
20   bandaging.

21   Doctor Robles refused to remove the wet blood-soaked bandaging even though he was aware
22   of the physician's post-surgery discharge instructions. Two to three days after he was seen by Doctor
23   Robles, the blood-soaked bandaging under the cast had dried and started to smell. Plaintiff became
24   concerned that an infection had developed.

25   Following excessive complaining to correctional staff, Plaintiff was taken to CTC where a
26   different doctor removed the blood-soaked bandage and replaced it with dry clean bandage.

27   On October 13, 2015, CTC performed an MRI on Plaintiff's left middle finger which revealed
28   the tendon had snapped.

**B.     Statement of Undisputed Facts**

1.     This action is based on medical treatment Plaintiff received relative to his left middle finger after surgery was conducted on June 26, 2015, at San Joaquin Community Hospital (San Joaquin) by Dr. Michael Freeman. (Pl.'s Dep. at 10:6-18, 11:6-25.)

2.     Defendants were part of the medical staff at North Kern State Prison (North Kern). R. Robles was a staff physician and surgeon (Dr. Robles). C. Riley (Nurse Riley) was a registered nurse. The complaint contains one claim directed to Dr. Robles and Nurse Riley. (Compl. at pp. 8-13;[1] ECF No. 1; Pl.'s Dep. at 14;17-15:6.)

3.     Plaintiff testified that the underlying injury to the subject finger occurred back in 2013 at a Los Angeles County jail facility during a gang riot wherein another prisoner attempted to stab Plaintiff with a knife. In an attempt to prevent getting stabbed, Plaintiff grabbed the knife which cut into the tendons on the subject finger. Plaintiff did not receive any treatment for the finger in the County jail system and no treatment until he entered the state prison system. (Pl.'s Dep. at 12:1-13:23.)

4.     Plaintiff testified that Dr. Freeman started treating his finger in January 2015. Plaintiff testified that the medical staff at North Kern made arrangements for him to travel to San Joaquin every time Dr. Freeman requested to see him. (Pl.'s Dep. at 13:24-14:10, 40:19-41:10.)

5.     Plaintiff testified that Dr. Freeman discussed with him the difficult nature of treating Plaintiff's finger long after the injury occurred and advised Plaintiff that normal function of his finger could not be restored. Plaintiff understood that this was a difficult problem and that, under the best circumstances, he would not have normal motion even with the surgery. (Pl.'s Dep. at 21:23-23:2, 23:25-24:9, 25:4-19.)

///
///
///

---

[1] All references to pagination of specific documents pertain to those as indicated on the upper right corners via the CM/ECF electronic court docketing system.

6.     Plaintiff testified that the June 26, 2015, surgery was the third of three planned surgeries to address the issue with his left middle finger. Dr. Freeman's post-surgical instructions, which Plaintiff understood, were to leave the splint in place and not to change the dressing and to follow up with him on July 22, 2015. (Pl.'s Dep. at 23:3-24, 26:10-27:15.)

7.     Plaintiff testified that his claim against Nurse Riley is based on one visit he had with her the day after the surgery on June 27, 2015, at around 7:30 p.m., which was a Saturday. In Plaintiff's visit with Riley, she examined the splint and dressing and noted there were no further signs of bleeding. Plaintiff disagrees with this observation but testified that nurse Riley reinforced his splint at that time by rewrapping it. Plaintiff testified that Nurse Riley and Dr. Robles advised him that they should not supersede or interfere with Dr. Freeman's instructions and that they were trying to follow Dr. Freeman's orders. (Pl.'s Dep. at 29:19-31:24, 33:8-25.)

8.     Plaintiff testified that Dr. Robles saw him the next morning at around 8:30 a.m. This was the only time Dr. Robles saw Plaintiff relative to the subject finger injury. During this visit, Dr. Robles spent about thirty minutes with Plaintiff. Plaintiff testified that Dr. Robles tried to satisfy his concerns including adjusting the splint and putting on more dressing. Dr. Robles advised Plaintiff that, if the situation continues or gets worse, he could return to the medical office. (Pl.'s Dep. at 15:7-18:15, 18:16-20, 34:10-35:6.)

9.     Plaintiff testified that he was provided pain medication by the North Kern medical staff from the time of the first surgery on February 6 up to and through the June 26 surgery and that it was given to him on an as-needed basis. (Pl.'s Dep. at 25:21-26:9, 29:9-18.)

10.     Plaintiff testified that after the visit with Dr. Robles on June 28, he was seen by other doctors at North Kern relative to the subject finger up until his scheduled return to Dr. Freeman on July 22, 2015. In the return visit to Dr. Freeman on July 22, Plaintiff testified that Dr. Freeman's observations during the examination after removing the splint was that there was no infection and the area of the subject finger was clean and dry. (Pl.'s Dep. at 37:6-38:25.)

//
///
///

**C. Analysis and Findings on Motion**

Defendants argue that they are entitled to summary judgment because there is no genuine issue of material fact as to whether they were deliberately indifferent to Plaintiff's medical needs.

The Eighth Amendment demands, among other things, that prison officials not act in a manner "sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976). An Eighth Amendment claim based on inadequate medical care has two elements: "the seriousness of the prisoner's medical need and the nature of the defendant's response to that need." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992). A medical need is "serious" "if the failure to treat the prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" Id. (quoting Estelle, 429 U.S. at 104); see also Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006).

"Deliberate indifference is a high legal standard." Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004). "Under this standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" Id. at 1057 (quoting Farmer, 511 U.S. at 837). "'If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.'" Id. (quoting Gibson v. County of Washoe, Nevada, 290 F.3d 1175, 1188 (9th Cir. 2002)). "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle v. Gamble, 429 U.S. at 106; Snow v. McDaniel, 681 F.3d at 978, 987-88 (9th Cir. 2012); Wilhelm v. Rotman, 680 F.3d 1113, 1122 (9th Cir. 2012).

"A difference of opinion between a physician and the prisoner - or between medical professionals - concerning what medical care is appropriate does not amount to deliberate indifference." Snow v. McDaniel, 681 F.3d at 987 (citing Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989)), overruled in part on other grounds, Peralta v. Dillard, 744 F.3d 1076, 1082-83 (9th Cir. 2014); Wilhelm v. Rotman, 680 F.3d at 1122-23 (citing Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1986)). Rather, Plaintiff "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances and that the defendants chose this course in conscious disregard

of an excessive risk to [his] health." Snow, 681 F.3d at 988 (citing Jackson, 90 F.3d at 332) (internal quotation marks omitted).

Defendants do not argue that Plaintiff's finger condition did not present an objectively serious medical need and therefore the Court's focus is limited to whether Defendants acted with deliberate indifference. Based on the evidence presented, the undisputed facts demonstrate that neither Defendant Nurse Riley nor Dr. Robles acted with deliberate indifference. Although Plaintiff did not file an opposition, the Court can and will consider Plaintiff's verified complaint as an opposing affidavit. Jones v. Blanas, 393 F.3d 918, 923 (9th Cir. 2004). As previously stated, Plaintiff contends that Nurse Riley and Dr. Robles should have removed the dressing and splint when they examined him. (Compl. at 10, 12.) However, Plaintiff offers no evidence except his own opinion that the treatment provided was medically unacceptable under the circumstances. At his deposition, Plaintiff acknowledged that his allegations stem from a one-time visit with Nurse Riley and Dr. Robles, respectively.

Plaintiff's claim against Nurse Riley is for a visit on June 27, 2015, the Saturday evening following the surgery. Although Plaintiff disagrees with the notation by nurse Riley that there was no bleeding of his left finger, the undisputed facts demonstrate that nurse Riley was attempting to follow the instructions provided by Dr. Freeman and provided additional bandaging of his finger. Nurse Riley attempted to address Plaintiff's complaints by providing additional bandaging of his finger. Riley further advised Plaintiff that there was not a doctor available Saturday evening but he would be seen the next day. Indeed, it is undisputed that Plaintiff was examined by Dr. Robles the next day, i.e. June 28, 2015.

Plaintiff's claim against Dr. Robles is based on a single visit that took place on June 28, 2015, at 8:30 a.m. It is undisputed that Dr. Robles spent approximately 30 minutes with Plaintiff that morning and attempted to address Plaintiff's concerning including adjusting the splint and adding dressing to the finger. Plaintiff admits that Dr. Robles advised him that it was his medical opinion that he should not take any action contrary to Dr. Freeman's discharge instructions not to remove the splint or dressing at that time. Further, Dr. Robles advised Plaintiff that, if the situation continued or got worse, he could return to the medical office. In fact, Plaintiff concedes that he returned a number of

8

times for examination until his scheduled return exam date with Dr. Freeman on July 22, 2015. Furthermore, during his follow-up exam with Dr. Freeman on July 22, 2015, after removal of the splint it was confirmed that there was no infection and the area of the subject finger was clean and dry.

Defendants have met their burden of setting for evidence that there is no genuine issue of material fact for trial, which shifts the burden to Plaintiff to submit admissible evidence showing the existence of genuine issues for trial. Plaintiff has not done so. Based on the evidence before the Court, both Nurse Riley and Dr. Robles provided treatment which they believed was reasonable and consistent with Dr. Freeman's post-surgery instructions. Furthermore, it is undisputed that Plaintiff was provided pain medication on an as needed basis by the medical staff at Norn Kern. In sum, the record demonstrates that Plaintiff's complaints regarding his finger were appropriately addressed by Defendants. It is clear from Plaintiff's deposition testimony that he received a great deal of medical treatment at the prison and at an outside facility. Plaintiff's mere disagreement with the course of treatment chosen by Defendants does not support a claim under the Eighth Amendment, and Defendants are entitled to summary judgment. Snow, 681 F.3d at 987-88.

## IV.

## RECOMMENDATIONS

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. Defendants' motion for summary judgment be granted; and
2. Judgment be entered in favor of Defendants Nurse Riley and Dr. Robles.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **twenty-one (21) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the

///
///
///
///

9

specified time may result in the waiver of rights on appeal. <u>Wilkerson v. Wheeler</u>, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing <u>Baxter v. Sullivan</u>, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **June 13, 2018**

_____
UNITED STATES MAGISTRATE JUDGE